UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHAMIR MODESTIN,<br><br>    Petitioner,<br><br>v.<br><br>PATRICK NOGAN, et al.,<br><br>    Respondents. | Civil Action No. 21-2059 (MCA)<br><br><br>OPINION |

This matter has been opened to the Court by Shamir Modestin's ("Petitioner" or "Modestin") filing of a habeas petition pursuant to 28 U.S.C. § 2254.[1] Having reviewed the Petition, Respondent's answer, and the relevant record in this matter, the Court denies the Petition for the reasons stated in this Opinion and also denies a certificate of appealability ("COA").

### I.    FACTUAL BACKGROUND & PROCEDURAL HISTORY

On August 17, 2011, S.J. was working as a prostitute in the area of the Asian Market on Tonnelle Avenue in Jersey City. (5T 7:16-21.) She entered the car of a client and the two started the drive to the Days Inn in North Bergen. (5T 7:21-22.) A dark colored SUV with flashing blue lights pulled in behind S.J. and her client. (1T 10:1-5; 5T 7:24-25; 5T 8:8-20.) The SUV was occupied by Modestin and his two co-defendants, Joel Williams and Eric Martin. (1T 9:11-14; 5T 7:14-15.) Before S.J. could enter the motel, she was dragged from the vehicle by Martin. (5T 8:2-3.) S.J. was handcuffed and told she was going to be arrested. (5T 8:3-4; 5T 9:25-10:1.) The

---

[1] Petitioner also uses the name Sha-Mir Springer. A search of the New Jersey Department of Corrections Inmate Locator indicates that Petitioner was released from prison on or about August 11, 2023. *See* https://www-doc.state.nj.us/DOC_Inmate/details?x=1500257&n=2 (last visited on Mar. 7, 2024.)

1

men were displaying badges and referred to Modestin as "Sarge" throughout the encounter. (5T 8:1-6; 5T 9:7-9.) S.J. was driven to another location in North Bergen where Modestin forced her to perform oral sex on him and he vaginally penetrated her. (1T 8:23-9:2; 5T 8:6-7; 5T 10:2-3.) The victim believed that she had to comply with Modestin's demands because he was a law enforcement officer and that she would be arrested for prostitution if she did not comply. (1T 9:3-10; 1T 10:11-14.) At the time of the sexual assault, Modestin was employed as an auxiliary police officer in New York. (5T 6:15-7:2.)

A Hudson County Grand Jury returned Indictment No. 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, charging Modestin with two counts of first degree aggravated sexual assault, in violation of N.J.S.A. 2C:14-2(a)(3); two counts of first degree aggravated sexual assault, in violation of N.J.S.A. 2C:14-2(a)(5); first degree kidnapping, in violation of N.J.S.A. 2C:13-1(b); third degree criminal restrain, in violation of N.J.S.A. 2C:13-2; fourth degree impersonating a police officer, in violation of N.J.S.A. 2C:28-8; and third degree terroristic threats, in violation of N.J.S.A. 2C:12-3(a). (RA 1-4.)

On June 27, 2013, Modestin pleaded guilty to count five of Indictment 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, first degree aggravated sexual assault, in violation of N.J.S.A. 2C:14-2(a)(5). (1T; RA 5-16.) Prior to sentencing, Modestin filed a pro se motion to withdraw his plea which was subsequently withdrawn.[2] (2T; 3T:5-17 to 6-10.) On August 12, 2014, Modestin was sentenced to fourteen years in state prison with an 85% period of parole ineligibility pursuant to the No Early Release Act ("NERA"). Modestin was also subject to parole supervision for life, Megan's Law, and Nicole's Law. (3T:19-21 to 20-7.)

On January 15, 2015, Modestin filed a Notice of Appeal. (RA 20-21.) The matter was heard on the SOA calendar and argued January 12, 2016. (4T.) By order dated January 12, 2016,

---

[2] The record does not include the pro se motion to withdraw the guilty plea.

2

the Appellate Division remanded the matter for the trial court "to reconsider the sentence without the 'public trust' factor because defendant was a New York police officer, not a New Jersey police officer." (RA 22.)

On February 25, 2016, the trial court re-sentenced Modestin under the conditions set forth in the Appellate Division's order. (5T.) After removing the public trust factor, the trial court imposed the sentence as set forth in the plea agreement. (5T:15-9 to 17-24.) On March 24, 2016, Modestin filed a Notice of Appeal. (RA 26-28.) The matter was heard on the SOA calendar and argued June 6, 2016. (6T) By order dated June 6, 2016, the Appellate Division affirmed the sentence but remanded the matter to correct the judgment of conviction with regard to prior service credit. (RA 29.) Modestin filed a petition for certification (RA 30-34), and the Supreme Court of New Jersey denied the petition by order entered September 11, 2017. (RA 35.)

On January 22, 2018, Modestin filed a pro se petition for post-conviction relief ("PCR petition"). By written opinion dated July 27, 2018, the PCR court denied Modestin's PCR petition without an evidentiary hearing. (RA 125-133.) On September 24, 2018, Modestin appealed the denial of his PCR petition (Ra134-136), and the Appellate Division affirmed the denial of PCR in an unpublished decision. (Ra212-214.) The Supreme Court of New Jersey denied Modestin's petition for certification on November 17, 2020. (Ra215-216.)

Petitioner filed his habeas petition ("Petition") on or about January 26, 2021.[3] (ECF No. 1, Petition at 16.) Respondents filed their original answer on December 9, 2021 and supplemented the record by submitting transcripts at the Court's direction on February 26, 2024. (ECF Nos. 9, 13.) Modestin did not submit a reply brief.

---

[3] The Court uses the date Petitioner signed his Petition as the filing date.

## II.  STANDARD OF REVIEW

Prior to bringing a federal habeas petition under 28 U.S.C. § 2254(b)(1)(A), a state prisoner must exhaust his state remedies. Nevertheless, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." § 2254(b)(2). If a state prisoner's constitutional claim has been barred in the state courts on independent and adequate state law grounds, there has been a procedural default, and a habeas court cannot review the claim absent a showing of cause and prejudice or actual innocence. *Coleman v. Thompson*, 501 U.S. 722, 729, 750 (1991).

If a constitutional claim has been exhausted, the following standard applies:

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Third Circuit directed habeas courts to follow a two-step analysis under § 2254(d)(1). *See Rosen v. Superintendent Mahanoy SCI*, 972 F.3d 245, 253 (3d Cir. 2020) (citing *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 888 (3d Cir. 1999) (en banc), *cert. denied* 528 U.S. 824 (1999)). First, courts must "determine what the clearly established Supreme Court decisional law was at the time Petitioner's conviction became final" and "identify whether the Supreme Court has articulated a rule specific enough to trigger 'contrary to' review." *Id.* at 253 (quoting *Fischetti v. Johnson*, 384 F.3d 140, 148 (3d Cir. 2004)). "The 'clearly established Federal law' provision

4

requires Supreme Court decisions to be viewed through a 'sharply focused lens.'" *Id.* Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), only if the state court applies a rule that "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a [different result.]" *Williams*, 529 U.S. at 405-06. Second, if Supreme Court precedent is not specific enough to trigger contrary review, habeas courts should "evaluate whether the state court unreasonably applied the relevant body of precedent." *Rosen*, 972 F.3d at 253 (quoting *Matteo*, 171 F.3d at 888)).

Under § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Williams*, 529 U.S. at 410). For relief under this provision, the state court's decision "evaluated objectively" must have "resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Rosen*, 972 F.3d at 252 (quoting *Matteo*, 171 F.3d at 890)). A habeas court must frame the "relevant question as whether a fairminded jurist could reach a different conclusion." *Shinn v. Kayer*, 141 S. Ct. 517, 524 (2020), or, in other words, whether "every fairminded jurist would disagree" with the state court. *Mays v. Hines*, 141 S. Ct. 1145, 1149 (2021).

A petitioner who claims that the state court's adjudication of his claim was based on an unreasonable factual determination under § 2254(d)(2), faces a similarly heavy burden of proof because "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockerell*, 537 U.S. 322, 340 (2003). "The petitioner

must show that the state court verdict was based on an unreasonable determination of the evidence and that a reasonable factfinder could not have reached the same conclusion." *Rosen*, 972 F.3d at 252 (3d Cir. 2020) (citing *Campbell v. Vaughn*, 209 F.3d 280, 291 (3d Cir. 2000)).

"Although state prisoners may sometimes submit new evidence in federal court," the habeas statute, "is designed to strongly discourage them from doing so." *Cullen v. Pinholster*, 563 U.S. 170, 186 (2011). "Provisions like §§ 2254(d)(1) and (e)(2) ensure that '[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.'" *Id.* (quoting *Williams*, 529 U.S. at 437 (additional citations omitted)). Review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Pinholster*, 563 U.S. at 180-81.

### III. **DISCUSSION**

Petitioner contends that he received ineffective assistance at the plea stage and that his plea was involuntary because it was coerced by his counsel's threat to withdraw.[4] Petitioner raised

---

[4] Petitioner's grounds for relief appears to be taken from the point headings of his brief appealing the denial of his PCR petition, and are reproduced below:

> Ground One: Ineffective Assistance of Counsel
>
> The post-conviction relief court erred in denying the defendant's petition for post-conviction relief without affording him an evidentiary hearing to fully address his contention that he failed to receive adequate legal representation from Trial Counsel
>
> Ground Two: Ineffective Assistance of Counsel
>
> The prevailing legal principles regarding claims of ineffective assistance of counsel, evidentiary hearings, and petitions for postconviction relief
>
> Ground Three: Ineffective Assistance of Counsel
>
> Defendant did not receive adequate legal representation from trial counsel as a result of his inability to continue to pay his counsel additional funds in the proceedings.

Petition at 5-8.

these claims in his PCR proceedings. In the moving brief accompanying his pro se PCR petition, Modestin alleged that plea counsel demanded more money at the plea cut off and when Petitioner could not pay that amount, plea counsel coerced Petitioner into pleading guilty by advising Petitioner that plea counsel would withdraw from the case and Petitioner would be forced to proceed with an appointed attorney. (RA 46-47.) Modestin submitted a sworn affidavit with his pro se PCR petition, but, notably, that affidavit does not include any facts about plea counsel's threat to withdraw if Petitioner did not plead guilty. (*See* RA 48-49.)

PCR counsel also submitted a supporting brief arguing that Petitioner's plea was not knowing or voluntary because he pleaded guilty due to the pressure of his attorney abandoning him and without knowing that consent was a defense to the charges. (RA 83-84.) PCR counsel also argued that counsel provided ineffective assistance of counsel and violated the Rules of Professional Conduct ("RPCs") when counsel "essentially threatened defendant that if he were not paid $30,000 he would not *handle* the trial." (RA 85 (emphasis in original).)

The record contains an "Agreement to Provide Pretrial Legal Services" that was signed by plea counsel and Modestin's representative Sha-Queena Gilbert on May 2, 2012. The Agreement pertains to the Hudson County Indictment and includes services for "plea negotiation" and "plea on the record and sentencing" for a flat fee to be paid in installments. (*See* RA 52-55.) As its name suggests, the Agreement does not mention trial services, and states that "if the above cases cannot be resolved by a plea on the record, entry into a Pretrial Intervention Program, or a dismissal, the Attorney's legal representation and obligations under the AGREEMENT shall conclude." (RA 54.) The Agreement also states that it "does not refer to any Trial (neither jury trial [n]or bench trial)." (RA 53.)

7

In addition, the record also contains a letter dated December 26, 2012, from plea counsel to Gilbert regarding an attached fee agreement to provide trial legal services.[5] (RA 51.) The letter states that plea counsel will represent Modestin at trial upon the receipt of a certified check in the amount of $35,000 and a signed fee agreement. (*Id.*) The letter also states in relevant part:

> On January 24, 2013, Shamir will have to decide if he wants to accept whatever plea offer is available to him or have his plea opportunity cut off and proceed to set a trial date. If Shamir does not enter a plea at that court date, our current Pretrial Fee Agreement will terminate, as will [plea counsel's] representation of Shamir in Hudson County.

(RA 51.)

The PCR court considered this evidence and rejected Petitioner's claim that counsel was deficient for threatening not to handle the trial if he was not paid. The PCR court determined that plea counsel was retained to provide pretrial services only and that the retainer agreement stated that a separate legal fee would be required if the case went to trial.[6] (RA 128.) The PCR court also found that this arrangement did not violate the Rules of Professional Conduct ("RPCs"), specifically RPC 7.1(a)(4). (RA 128.) The PCR court noted that prior to seeking to withdraw, plea counsel negotiated a concurrent sentence for two separate criminal acts involving different victims, and that, under the circumstances of the case, counsel's performance fell within the wide range of professional assistance. (*Id.*)

The PCR court also rejected Modestin's claim that his plea counsel was deficient for failing to advise Petitioner that consent was a defense to the charges. As explained by the PCR court, Modestin

---

[5] The letter refers to an attached plea agreement but that agreement is not in the record.

[6] The retainer agreement for pretrial legal services in the record does not state that a separate fee will be required if the case went to trial, but it does clearly state that trial services are not included.

8

> impersonated a police office, handcuffed [the victim], took her to a remote location, and ordered her to perform sexual acts. Under these circumstances, permission of [the victim] can neither be inferred from acts nor statements since she was taken against her will and ordered to perform these sexual acts. Therefore these acts could not be considered consensual.

(RA 128-129.) The PCR court further determined that Petitioner's conduct in impersonating a police officer in order to engage in the sexual penetration of the victim, which Modestin admitted in his plea colloquy, met the definition of coercion under N.J.S.A. 2C:14-2a(5). (*Id.*) The PCR court found that a guilty plea to one count of aggravated assault was an "attractive strategy" in light of the risk that a jury would find Modestin guilty at trial and that plea counsel negotiated an extremely favorable plea deal on Petitioner's behalf. (*Id.* at 129-130.)

The PCR court also rejected Petitioner's claim that his plea was coerced due to plea counsel's threat to withdraw and due to counsel's failure to advise him that consent is a defense to the charges. The PCR court found that Petitioner had not provided any credible evidence that he was coerced and also failed to show that he was prejudiced by enforcement of the plea. (RA 131.) The PCR court focused primarily on Modestin's plea colloquy, in which Petitioner stated under oath that he was not coerced or threatened into taking the plea and acknowledged that he was satisfied with his plea counsel's representation. (RA 130-31; *see also* 1T 5:21-25; 1T 6:8-10; 1T8:10-12.) The PCR court also noted that Petitioner averred during the plea colloquy that he understood the charges against him, the penal consequences, and the trial rights he was giving up through his guilty plea, and initialed and signed plea forms indicating the same. (RA 131-33; *see also* 1T 4:23-5:3; 5:8-20; 6:5-17; 6:21-8:7.) The PCR court determined that Petitioner had not submitted sufficient evidence that his plea was not knowing and voluntary. (RA 133.)

Petitioner appealed the denial of his PCR petition, arguing that the PCR court erred in denying Modestin's PCR petition without an evidentiary hearing on his claims that he received

9

inadequate legal counsel at the plea cut off once plea counsel learned that Modestin was unable to continue to pay him. (RA 147.) Modestin also argued that plea counsel told him that he should accept the plea offer or plea counsel would withdraw from the case. (*Id.*) Modestin further argued that he felt he had no alternative but to accept the plea offer because plea counsel refused to represent him and he had no money to hire another attorney. (*Id.*) As a result, Modestin claimed that his plea was involuntary. (*Id.* at 147-149.)

The Appellate Division, which is the last reasoned decision, concluded that Petitioner's arguments "lack[ed] sufficient merit to warrant discussion in a written opinion[,] R. 2:11-3(e)(2)[,]" and "affirm[ed] substantially for the reasons set forth by the judge in his well-reasoned decision." *Modestin*, 2020 WL 2516876, at *1. The Appellate Division also "add[ed] the following brief remarks":

> A defendant is entitled to an evidentiary hearing only when he "has presented a prima facie [case] in support of [PCR]," meaning that a defendant must demonstrate "a reasonable likelihood that his ... claim will ultimately succeed on the merits." *State v. Marshall*, 148 N.J. 89, 158 (1997) (first alteration in original) (quoting *State v. Preciose*, 129 N.J. 451, 462 (1992)). To obtain relief based on ineffective assistance grounds, a defendant must demonstrate not only that counsel's performance was deficient, but also that the deficiency prejudiced his right to a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Fritz*, 105 N.J. 42, 58 (1987) (adopting the *Strickland* two-part test in New Jersey, now known as the *Strickland/Fritz* test). Defendant failed to meet this standard warranting an evidentiary hearing; he has not established a prima facie case of ineffectiveness, but instead made unsupported bald assertions.

*Modestin*, 2020 WL 2516876, at *1.

### a. Ineffective Assistance Claims

The Court begins with Petitioner's claims that he was provided ineffective assistance at the plea stage. These claims are governed by the familiar standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which constitutes "clearly established Federal law" for AEDPA

purposes. *See Williams v. Taylor*, 529 U.S. 362 (2000); *Rainey v. Varner*, 603 F.3d 189, 197 (3d Cir. 2010). "Under *Strickland*, a defendant who claims ineffective assistance of counsel must prove (1) 'that counsel's representation fell below an objective standard of reasonableness,' and (2) that any such deficiency was 'prejudicial to the defense.'" *Garza v. Idaho*, 139 S. Ct. 738, 744, (2019) (citations omitted) (quoting *Strickland*, 466 U.S. at 687–88, 692). With respect to the performance prong, *Strickland* admonishes that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is a petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal citations omitted); *see also Harrington*, 562 U.S. at 105 ([w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard"). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A reasonable probability means a "'substantial,' not just 'conceivable,' likelihood of a different result." *Shinn*, 141 S. Ct. at 523 (citing *Pinholster*, 563 U.S. at 189). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.

Where a petitioner claims that his guilty plea was the result of ineffective assistance of counsel, he must also establish that "counsel's representation fell below an objective standard of reasonableness." *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985) (quoting *Strickland*, 466 U.S. at 688). If the petitioner satisfies the first prong of this test, he must generally show "that there is a

11

reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

In addition, the Supreme Court has emphasized "the special importance of the AEDPA framework in cases involving *Strickland* claims." *Shinn*, 141 S. Ct. at 524. In *Shinn*, the Supreme Court explained that "federal courts may not disturb the judgments of state courts unless 'each ground supporting the state court decision is examined and found to be unreasonable.'" *Id.* at 524 (quoting *Wetzel v. Lambert*, 565 U.S. 520, 525 (2012)). Thus, the Court explained, "if a fair-minded jurist could agree with either [the state court's] deficiency or prejudice holding, the reasonableness of the other is 'beside the point.'" *Id.*

Here, the state court did not unreasonably apply the two-part *Strickland* test, which applies to challenges to guilty pleas based on ineffective assistance of counsel. *See Hill*, 474 U.S. at 58. In rejecting Modestin's claim that his counsel provided inadequate representation, the PCR court relied on the retainer agreement, counsel's communications, Modestin's sworn statements at the plea colloquy, plea counsel's negotiation of a favorable plea deal prior to withdrawing, and the lack of other credible evidence of a threat. The Appellate Division agreed that Modestin did not establish a prima facie case of ineffective assistance and instead made "unsupported bald assertions."[7] This Court finds that the state courts did not unreasonably apply *Strickland's* performance prong or rely on any unreasonable determinations of the facts in rejecting Petitioner's claim based on his attorney's alleged threat to withdraw.

Moreover, even if plea counsel crossed the line and provided ineffective assistance by asking for additional money near the plea cut off and threatening to withdraw if Modestin did not

---

[7] As noted above, the record does include any sworn statements from Modestin regarding the alleged threats by his counsel.

12

accept the plea deal, Petitioner fails to show *Strickland* prejudice, which focuses on whether counsel's alleged errors affected the outcome of the plea process. *See Hill*, 474 U.S. at 59. "[T]o obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010) (citing *Roe v. Flores–Ortega*, 528 U.S. 470, 480, 486 (2000)). Petitioner has not established *Strickland* prejudice with respect to his claim that his attorney was deficient for asking for additional money to represent him at trial and threatening to withdraw if he did not accept the plea deal because he has not shown a reasonable probability that he would have rejected the plea and proceeded to trial but for his attorney's threats to withdraw. *See Hill*, 474 U.S. at 59.

Petitioner vaguely alludes to "defenses to the charges in this matter" in his PCR appellate brief (RA 129), but such vague contentions do not show that he would have rejected the plea deal and proceeded to trial in the absence of plea counsel's threat to withdraw. Petitioner has offered no credible evidence or arguments that he would have proceeded to trial on the sexual assault and related charges or that plea counsel could have negotiated a better plea deal.

Before the PCR court, Petitioner raised consent as a defense to the charges.[8] As the PCR court found, however, consent was not a valid defense where the evidence showed that Modestin impersonated a police officer and the victim was taken against her will and ordered to perform sexual acts. Because Petitioner has not shown that he would have risked going to trial instead of taking a favorable plea deal, he fails to show prejudice.

Petitioner also asserts that the state courts erred in denying him a hearing on his ineffective assistance claims. The state courts were not required to hold a hearing on his claims, because it determined that he did not establish a prima facie case of ineffective assistance and relied on

---

[8] He does not raise this issue here, but it would fail for the reasons explained by the PCR court.

13

unsupported allegations. Because that determination was not an unreasonable application of *Strickland* or an unreasonable determination of the facts, the Court denies relief on this claim as well.

### b. Involuntary/Coerced Plea

Petitioner also argued in his PCR petition that his guilty plea was involuntary because his counsel threatened to withdraw from the case if he did not accept the plea deal offered to him. The PCR court found, however, that Petitioner had the opportunity to apprise the trial court of this threat, that Petitioner's sworn statements in his plea colloquy undermined his claim that his plea was involuntary, and that there was a lack of credible evidence in the record to support the threat. In his PCR appeal, Petitioner reiterates his claim that his plea was involuntary due to his attorney's threat to withdraw and argued that the Court erred in denying this claim without a hearing.[9] (RA 147-148.) The Appellate Division did not address this claim separately in its decision and presumably rejected it for the reasons stated by the PCR court.

In order to be valid, a guilty plea most be both knowing and voluntary. *Parke v. Raley*, 506 U.S. 20 (1992). Because a guilty plea must be the voluntary expression of the defendant's own choice, *see Brady v. United States*, 397 U.S. 742, 748 (1970), the Supreme Court has long held that "the agents of the state may not produce a plea by actual or threatened physical harm or by mental coercion overbearing the will of the defendant." *Id.* at 750; *see also Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("[a] guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void" and "open to collateral attack.") The voluntariness

---

[9] In his PCR appellate brief, Petitioner cites to *State v. Simon*, 161 N.J. 416, 443 (1999) for the proposition that a plea must be voluntary and free from coercion, and that state court decision relies on *Blackledge v. Allison*, 431 U.S. 63, 74 (1977), along with other authorities.

14

of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Brady*, 397 U.S. at 749.

As relevant here, the Supreme Court has also held that "[a] transcript showing full compliance with the customary inquiries and admonitions furnishes strong, although not necessarily conclusive, evidence that the accused entered his plea without coercion and with an appreciation of its consequences." *See Boykin v. Alabama*, 395 U.S. 238, 242-44 & 244 n. 7 (1969). And although such "[s]olemn declarations in open court carry a strong presumption of verity" that create a "formidable barrier in any subsequent collateral proceedings" *see Blackledge v. Allison*, 431 U.S. 63, 74 (1977), there is no per se rule that a defendant's sworn statements are an "insurmountable" obstacle to a coercion claim. *See id.*

In *Blackledge v. Allison*, 431 U.S. 63 (1977), a state defendant was required to complete a printed form used by the trial court in connection with guilty pleas. One of the questions asked whether the defendant understood he could be imprisoned for a minimum of ten years to life. The defendant wrote "Yes" in response. The other relevant question was whether "the Solicitor, or your lawyer, or any policeman, law officer or anyone else made any promises or threat to you to influence you to plead guilty." *Id.* at 66. The defendant answered "No." After sentencing, the defendant filed a petition in federal court alleging that before he entered his plea, his attorney had led him to believe that as a result of an agreement with the Solicitor and the judge the sentence would be no more than ten years. The defendant also asserted that he had been instructed to answer the questions on the court's form as he had done. The Supreme Court held that Allison's habeas corpus petition should not have been dismissed simply because of his answers to the questions at the plea proceeding. The Court explained that "the barrier of the plea or sentencing proceeding record, although imposing, is not invariably insurmountable." *Id.* at 74. Consequently, "the federal

15

courts cannot fairly adopt a per se ruling excluding all possibility that a defendant's representations at the time his guilty plea was accepted were so much the product of such factors as misunderstanding, duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment." *Id.* at 75.

The Third Circuit has expressly held that "[a] threat by a defendant's attorney to withdraw from the case if the defendant does not plead guilty may render a guilty plea involuntary." *Heiser v. Ryan*, 951 F.2d 559, 561 (3d Cir. 1991) (citing *Downton v. Perini*, 511 F. Supp. 258, 259, 264-66 (N.D. Ohio 1981)). The petitioner in *Heiser* had waited more than eleven years for a Pennsylvania state court to hear his motion to withdraw a guilty plea and more than four years had passed since he filed a PCRA petition alleging that his guilty plea was coerced. *See id.* at 560. Still awaiting rulings in state court, "Heiser filed a habeas petition contending that this post-verdict delay violated his due process rights and that his guilty plea was neither knowing nor voluntary." *Id.* The district court excused exhaustion on the basis of the inordinate delay but denied Heiser's habeas petition on the merits without a hearing. *Id.* at 560-61. The district court had relied on the plea colloquy alone to reject Heiser's claims of coercion, but the Third Circuit found this was "not enough" and that an evidentiary hearing was required because Heiser's claims were not adequately developed or resolved in the state court proceedings. *Id.* at 562-63.

Here, however, the state courts addressed Modestin's involuntary plea claim in the first instance, and, in order to obtain relief, Petitioner must show that the state court unreasonably applied clearly established Supreme Court precedent or made an unreasonable determination of the facts in light of the record evidence. Using the more deferential AEDPA standard, this Court finds that the state court did not unreasonably apply clearly established Supreme Court precedent in rejecting Petitioner's claim that his plea was coerced. In resolving this claim, the PCR court

considered the totality of the circumstances and relied primarily on Petitioner's sworn statements in his plea colloquy, Petitioner's failure to mention the threat to the trial court despite several opportunities to do so, and the lack of other credible evidence of a threat. The record before the PCR court also included 1) a retainer agreement showing that plea counsel was retained for pretrial legal services only and 2) a letter setting forth the fees for trial services and explaining that the representation under the pretrial services agreement would conclude if Petitioner chose not to take the plea deal. The PCR court found that this evidence undermined Petitioner's claim that plea counsel "threatened" to withdraw if he did not accept the plea deal. The state court's factual findings are entitled to AEDPA deference, 28 U.S.C. § 2254(b)(2), and Petitioner has not shown clear and convincing evidence sufficient to overcome those findings. Ultimately, under the circumstances of this case, Petitioner did not present sufficient evidence to overcome the heavy burden that his plea was entered into voluntarily and not as a result of his attorney's threat to withdraw from the case. *See, e.g., Mullins v. Rozem*, No. 11-2504, 2011 WL 6812888, at *3 (E.D. Pa. 2011) (Dec. 28, 2011) (rejecting claim involving alleged threats by prosecutor based on the petitioner's sworn statements in the plea colloquy).

Moreover, even if Petitioner's plea was involuntary or the product of coercion, the alleged error must have had a "substantial and injurious effect" on the verdict to qualify for habeas relief. *See Brecht v. Abramson*, 507 U.S. 619, 637 (1993); *Fry v. Pliler*, 127 S. Ct. 2321, 2328 (2007) ("a court must assess the prejudicial impact of constitutional error ... under the 'substantial and injurious effect' standard set forth in *Brecht*, 507 U.S. 591, whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman*, 386 U.S. 18."). Here, Petitioner has not shown that he was

prejudiced in any way by his attorney's alleged coercion and thus is not entitled to relief on claim that his plea was involuntary.

### c. Certificate of Appealability

Pursuant to Local Appellate Rule 22.2 of the Rules of the United States Court of Appeals for the Third Circuit, at the time a final order denying a habeas petition is issued, the district judge is required to determine whether a certificate of appealability ("COA") should issue. Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding unless he has "made a substantial showing of the denial of a constitutional right." *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Miller-El v. Cockrell*, 537 U.S. 322 (2003). Because Petitioner has not made a substantial showing of the denial of a constitutional right, the Court will deny a COA.

## IV. CONCLUSION

For the reasons explained in this Opinion, the Court denies the Petition and also denies a COA. An appropriate Order follows.

DATED: ~~March~~ April 23, 2024.

Madeline Cox Arleo
United States District Judge